# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JOSEPH BOACHIE-DANQUAH,<br>    Petitioner, | Case No. 1:17-cv-641 |
| vs. | Black, J.<br>Bowman, M.J. |
| U.S. ATTORNEY GENERAL, *et al.*,<br>    Respondents. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, who is currently detained pursuant to removal orders issued by United States Immigration and Customs Enforcement (ICE),[1] has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (*See* Doc. 1). This matter is before the Court on respondents' motion to dismiss, to which petitioner has responded. (Doc. 12, 14).

For the reasons stated below, the undersigned recommends that the motion be granted and the petition be denied without prejudice.

## I. BACKGROUND

On October 2, 1997, petitioner, a native and citizen of Ghana, entered the United States under a B-2 visitor visa. (Doc. 12-1, Glassburn Decl. at PageID 49). Petitioner overstayed his six-month period of authorized stay and, on November 5, 2002, a notice to appear was issued, charging petitioner as removable under 8 U.S.C. § 1227(a)(1)(B) and (a)(3)(D), overstay of a non-immigrant visa and false claim to United States citizenship respectively. (*Id.*). On October 9, 2012, petitioner was ordered removed, after petitioner conceded removability under § 1227(a)(1)(B) and the immigration judge sustained his removability under § 1227(A)(3)(D) and

---

[1] At the time of filing the petition, petitioner was detained at the Butler County Jail, in Hamilton, Ohio. (*See* Doc. 1, Petition at PageID 1). On November 20, 2017, petitioner informed the Court that he was transferred to the Northeast Ohio Correctional Center in Youngstown, Ohio. (*See* Doc. 10).

found that he was inadmissible pursuant to INA § 212 (a)(6)(C)(ii)(I).[2] (*Id.* at PageID 50, 61). Petitioner appealed the immigration judge's order. On June 2, 2014, the Board of Immigration Appeals dismissed his appeal, rendering petitioner's removal final. (*Id.* at PageID 50, 63–66).

Petitioner was taken into ICE custody on March 15, 2017. He commenced the instant habeas corpus action on September 25, 2017. (*See* Doc. 1). Petitioner contends that he is entitled to relief because he has been detained for more than six months with no significant likelihood of actual removal, in violation of *Zadvydas v. Davis*, 553 U.S. 678 (2001). He also claims that his continued detention violates his federal due process rights.

Respondents have filed a motion to dismiss the petition, arguing that petitioner has not met his burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. (Doc. 12). In support of the motion, respondents include the Declaration of Amanda Glassburn, an ICE Deportation Officer familiar with the deportation proceedings against petitioner. (Doc. 12-1, Glassburn Decl. at PageID 49). According to Glassburn, there is a significant likelihood that petitioner will be removed in the reasonably foreseeable future. (Doc. *Id.* at PageID 51).

Petitioner has filed a response in opposition to respondents' motion. (Doc. 14).

**II. OPINION**

Congress has prescribed that once an alien has been ordered to be removed from the United States, "the Attorney General shall detain the alien" and "remove the alien from the United States within a period of 90 days." 8 U.S.C. §§ 1231(a)(1)(A) & 1231(a)(2). Title 8 U.S.C. § 1231(a)(6) further provides in relevant part:

---

[2] INA Section 212(a)(6)(C)(ii)(I), codified at 8 U.S.C. § 1182, states that "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this Act . . . or any other Federal or State law is admissible."

2

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the [90-day] removal period.

By its terms, § 1231(a)(6) "applies to three categories of aliens: (1) those ordered removed who are inadmissible under § 1182, (2) those ordered removed who are removable under § 1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4), and (3) those ordered removed whom the Secretary [of DHS] determines to be either a risk to the community or a flight risk." *Clark v Martinez,* 543 U.S. 371, 377 (2005). In *Zadvydas v. Davis,* 533 U.S. 678 (2001), the Supreme Court interpreted the provision "to authorize the Attorney General (now the Secretary [of DHS]) to detain aliens in the second category only as long as 'reasonably necessary' to remove them from the country." *Clark,* 543 U.S. at 377 (quoting *Zadvydas*, 533 U.S. at 689, 699). The *Zadvydas* Court held that reading § 1231(a)(6) to authorize indefinite detention would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Zadvydas*, 533 U.S. at 690. Therefore, the Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* at 682.

In *Zadvydas*, 533 U.S. at 701, the Supreme Court considered the six-month detention of an alien who is subject to removal due to criminal convictions to be presumptively reasonable. The Court then provided the following guidance in addressing detentions that exceed the six-month presumptively reasonable limit:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the

3

> contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

In this case, petitioner does not challenge his removal order or dispute that he is inadmissible under § 1182. Because petitioner was deemed to be inadmissible under § 1182, he falls within the first category of aliens eligible for extended detention under § 1231(a)(6). It is undisputed that, at this point in time, petitioner has been detained longer than the six-month presumptively reasonable period under *Zadvydas*. However, petitioner has not met his initial burden of proof under *Zadvydas* in the absence of any evidence in the record showing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701.

It appears from the record presented that ICE officials have been working to secure a travel document for petitioner's removal. ICE Deportation Officer Glassburn avers that a Travel Document request packet was submitted to the Ghanaian Embassy on April 6, 2017. (Glassburn Decl., Doc. 12-1 at PageID 50, ¶9). Decisions to Continue Detention were issued on June 7, 2017 and September 28, 2017, with the latter indicating that "ICE is currently working with the Government of Ghana to secure a travel document for your removal from the United States. A travel document from the Government of Ghana is expected, therefore you are to remain in ICE custody at this time." (*Id.* at PageID 68). Respondents further indicate that ICE has "recently been in communication with the Ghanaian embassy regarding Boachie-Danquah's travel document and are awaiting the scheduling of an interview for the issuance of the travel document." (Doc. 12 at PageID 45; Glassburn Decl. at PageID 51). According to Glassburn, there are no current impediments to removing aliens to Ghana and the Ghanaian Embassy routinely issues travel documents. (Glassburn Decl. at PageID 51). Glassburn believes it is

significantly likely that petitioner can and will be removed from the United States in the reasonably foreseeable future. Although, petitioner contends that Ghana has refused to issue his travel documents (Doc. 14, at PageID 72), there is no evidence in the record to suggest that Ghana will refuse to issue the requested travel document or that there is any institutional barrier or other impediment that will prevent petitioner's removal from the United States to Ghana in the reasonably foreseeable future.

In other analogous cases where the only impediment to removal is the issuance of the appropriate travel documentation, courts have uniformly held that "mere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Estenor, supra,* 2011 WL 5572596, at *3 (citing *Joseph v. Holder*, No. 11-11118, 2011 WL 2893070, at *3 (E.D. Mich. July 20, 2011); *Resil v. Hendricks*, Civ. Act. No. 11-2051, 2011 WL 2489930, at *6 (D.N.J. June 21, 2011)); *see also Newell v. Holder*, 983 F. Supp.2d 241, 248 (W.D.N.Y. 2013) (and numerous cases cited therein); *Nasr v. Larocca,* No. CV 16-1673, 2016 WL 3710200, at *3-4 (C.D. Cal. June 1, 2016) (Report & Recommendation) (and numerous cases cited therein), *adopted*, 2016 WL 3704675 (C.D. Cal. July 11, 2016); *Chen v. Banieke*, Civ. No. 15-2188, 2015 WL 4919889, at *4-5 (D. Minn. Aug. 11, 2015); *Head v. Keisler*, No. CIV-07-402-F, 2007 WL 4208709, at *5-6 (W.D. Okla. Nov. 26, 2007) (and numerous cases cited therein). In the absence of any evidence in the record to suggest that the Ghanaian Embassy will not issue the requested and expected travel document in the reasonably foreseeable

future, the undersigned concludes that petitioner has failed to meet his initial burden of proof under *Zadvydas*.[3]

Finally, petitioner has not demonstrated that he is entitled to habeas relief on the ground that he has not been provided a "neutral decision-maker" to review his continued custody in violation of his right to procedural due process. (*See* Doc. 1 at PageID 4–5). There is simply no evidence in the record even remotely suggesting there is any merit to that conclusory claim. *Cf. Atugah v. Dedvukaj*, No. 2:16cv68, 2016 WL 3189976, at *4 (W.D. Mich. May 10, 2016) (Report & Recommendation) (rejecting a similar claim as meritless), *adopted*, 2016 WL 3166600 (W.D. Mich. June 7, 2016), *appeal filed*, No. 16-1862 (6th Cir. June 22, 2016); *Moses, supra*, 2016 WL 2636352, at *4 (holding in an analogous case that in the absence of "some indication . . . that ICE failed to comply with any specific requirements" of custody-review procedures established in the Code of Federal Regulations, petitioner had not demonstrated a violation of his Fifth Amendment right to procedural due process).

---

[3] The cases cited by petitioner in his reply involve situations where there was evidence of a lack of response from the foreign government and/or long detention periods and are therefore distinguishable. *See Okwilagwe v. INS*, 3-01-CV-1416-BD, 2002 WL 356758, at *2 (D.N.J Apr. 14, 2010) (granting writ where, after the petitioner had been detained for eleven months, lack of communications from consular officials provided "no way to determine" whether the removal would occur in the reasonably foreseeable future); *Lewis v. INA*, No. 00CV0758(SJ), 2002 WL 1150158, at *4-5 (E.D.N.Y. May 7, 2002) ("good showing" requirement satisfied where "there [was] no evidence that the Consulate responded to any of [the Immigration and Naturalization Services' (INS)] letters" and a panel of INS interviewers had concluded "that travel documents were unlikely to be issued in the foreseeable future and recommended the release of Petitioner pending deportation."); *Kacanic v. Elwood*, No. CIV.A. 02-8019, 2002 WL 31520362, at *3-5 (E.D. Pa. Nov. 8, 2002) (granting writ where there was little contact with consular officials during first nine months of the petitioner's detention and the government's "own actions [showed] that it believe[d] that it [was] unlikely the Petitioner w[ould] be removed in the near future"); *Thompson v. I.N.S.*, No. 2:02-cv-817 at *3–4 (E.D.La. Nov. 22, 2002) (Doc. 13) (granting habeas relief when petitioner was detained one year and four months and "no proof in the record of any response from Guyana to the [travel document] request, nor evidence of any follow up since November 2001"); *Zhou v. Farquharson*, No. 01-11391-RWZ at *2–3 (D. Mass Oct. 19, 2001) (Doc. 6) (ordering that a writ of habeas shall issue if the petitioner was not repatriated within sixty days, where the petitioner was detained 13-months and given "the lack of assurances from the INS that the necessary paperwork from China is currently on its way"). *See also Mohamed v. Ashcroft*, No. C01-1747P, 2002 WL 32620339, at *1 (W.D. Wash. Apr. 15, 2002) (granting writ where the foreign embassy failed to respond and the government "offered no specific information regarding how or when they expect[ed] to obtain the necessary documentation or cooperation"); *Seretse v. Ashcroft*, 215 F. Supp.2d 37, 50 (D.C. Cir. 2002) (granting the petitioner's motion for preliminary injunction where he had been detained "almost four years after his transfer to INS custody").

Accordingly, in sum, the undersigned concludes that petitioner has not demonstrated that he is entitled to habeas corpus relief because he has not shown that he is currently in ICE custody in violation of the Constitution or laws of the United States. Although petitioner has not shown an entitlement to relief at this time, if his detention continues for an extended period, he may be able to make the requisite showing under *Zadvydas* at a later time. *Cf. Nasr, supra*, 2016 WL 3710200, at *6 (and cases cited therein); *Estenor, supra,* 2011 WL 5572596, at *4. Therefore, the instant petition should be dismissed without prejudice to petitioner's ability to apply for future relief if circumstances change. *See id.*

## IT IS THEREFORE RECOMMENDED THAT:

1. The petitioner's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) be **DISMISSED** without prejudice.

2. A certificate of appealability should not issue because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

    *s/ Stephanie K. Bowman*
    Stephanie K. Bowman
    United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JOSEPH BOACHIE-DANQUAH,  Case No. 1:17-cv-641
    Petitioner,

                                         Black, J.
vs.                                           Bowman, M.J.

U.S. ATTORNEY GENERAL, *et al.*,
    Respondents.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).